UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| FLOYD PISCATELLI, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5: 25-107-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| FRANK BISIGNANO, [1] | ) | **MEMORANDUM OPINION** |
| Commissioner of Social Security, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiff Floyd Piscatelli appeals the Social Security Administration's denial of his claim for disability insurance benefits ("DIB") and Supplemental Social Security Income ("SSI"). [Record No. 11] He contends that the Administrative Law Judge ("ALJ"), assigned to his case erred in determining the persuasiveness of medical opinions and by failing to consider his most significant symptoms when assessing his residual functional capacity ("RFC"). *Id.* But after reviewing the record and considering the parties' arguments, the Court concludes that the ALJ's decision is supported by substantial evidence. Therefore, the Commissioner's motion for judgment [Record No. 13] will be granted while Piscatelli's motion [Record No. 11] will be denied.

---

[1] Frank Bisignano became the Commissioner of Social Security on May 6, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank Bisignano is substituted as the defendant in this suit.

## I. Background

Piscatelli was forty-four years old when he applied for benefits under the Social Security Act ("Act"). [Record No. 10 at 66]. He received his GED in 2000 and worked for about fifteen years as an electrical technician. [Record No. 10 at 269] But Piscatelli stopped working in March 2020 due to the following medical conditions: diabetes, high blood pressure and cholesterol, Meniere's disease, hearing loss in his right ear, and depression. *Id.* at 66. He filed applications for disability and SSI under Titles II and XVI of the Act in June 2021, alleging a period of disability beginning in March 2020. [Record No. 10 at 66] His claims were denied initially and again following reconsideration. *Id.* at 110, 135. Thereafter, ALJ Jeffrey Eastham held an administrative hearing in February 2024. *Id.* at 44. The ALJ issued an opinion denying the plaintiff's claim for benefits. *Id.* at 24. Piscatelli then sought review from the Appeals Council, but that request was denied. *Id.* at 13.

The matter is ripe for judicial review pursuant to 42 U.S.C. § 405(g).

## II. Legal Standard

A "disability" under the Act is defined as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment of at least one year's expected duration." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007) (citing 42 U.S.C. § 423(d)(1)(A)). A claimant's disability determination is made by an ALJ in accordance with "a five-step sequential evaluation process." *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) (en banc).

In determining whether a claimant is "disabled" and entitled to supplemental income, he must first demonstrate that he is not engaged in substantial gainful employment at the time of the disability application. 20 C.F.R. §§ 404.1520(b), 416.920(b). Second, the claimant

must show that he suffers from a severe impairment or a combination of impairments.  20 C.F.R. §§ 404.1520(c), 416.920(c).  Third, if the claimant is not engaged in substantial gainful employment and has a severe impairment which is expected to last for at least twelve months and which meets or equals a listed impairment, he will be considered disabled without regard to age, education, and work experience.  20 C.F.R. §§ 404.1520(d), 416.920(d).  Fourth, if the claimant has a severe impairment but the ALJ cannot make a determination regarding the disability based on medical evaluations and current work activity, the ALJ will review the claimant's RFC and relevant past work to determine whether he can perform her past work.  20 C.F.R. §§ 404.1520(e), 416.920(e).  If he can, he is not disabled.  20 C.F.R. §§ 404.1520(f), 416.920(f).

If the claimant's impairments prevent him from doing past work, the ALJ will consider his RFC, age, education, and past work experience to determine whether he can perform other work under the fifth step of the analysis.  If he cannot perform other work, the ALJ will find the claimant disabled.  20 C.F.R. §§ 404.1520(g), 416.920(g).  "The Commissioner has the burden of proof only on 'the fifth step, proving that there is work available in the economy that the claimant can perform.'"  *White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 785 (6th Cir. 2009) (quoting *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999)).

A district court's review is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the ALJ applied the proper legal standards in reaching his or her decision.  42 U.S.C. § 405(g); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).  In addition, a reviewing court does not conduct a *de novo* review, resolve conflicts in evidence, or decide questions of credibility.  *See Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012).  If the court finds substantial evidence to support the

- 3 -

Commissioner's judgment, it must affirm that decision even if it would have decided the matter differently, and even if substantial evidence also supports the opposite conclusion. *Id.* at 714. And substantial evidence is such relevant evidence as reasonable minds might accept as sufficient to support the conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

### III.  Analysis

Here, the ALJ conducted the five-step analysis required for evaluating social security disability cases. [Record No. 10 at 24–32]  And Piscatelli does not contest this.  [*See* Record Nos. 11-1 and 14.]  However, he does challenge two aspects of the ALJ's decision that (1) he improperly evaluated Piscatelli's primary care physician Jonathan Clark, MD's medical opinion, and (2) he failed to address Piscatelli's most significate Meniere's disease symptoms. [Record No. 11]  The Commissioner disagrees, insisting that the ALJ's evaluation of Dr. Clark's medical opinion complied with regulations and minimum articulation requirements and that the "most significant symptoms" are those reported by Piscatelli himself which were found not be consistent with evidence in the record by the ALJ.  [Record No 13 at 1, 8]

### (1)  Evaluation of Doctor Clark's Medical Opinion

Medical opinions' supportability and consistency "are the most important factors [ALJs] consider when [they] determine how persuasive [they] find a medical source's medical opinions."  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  The supportability determination is defined in this way: "[t]he more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight [the ALJ] will give that medical opinion."  20 C.F.R. §§ 404.1527(c)(3); 416.927(c)(3).  And "[t]he better an explanation a source provides for a medical opinion, the more weight [the ALJ] will give

- 4 -

that medical opinion." 20 C.F.R. §§ 404.1527(c)(3); 416.927(c)(3). Stated differently, the supportability factor provides that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

And the more "consistent" a medical opinion is with the evidence from other medical and nonmedical sources in the record, the more persuasive the ALJ should find the medical opinion. 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). To be sure, the consistency factor "requires the ALJ to compare the medical opinion at issue to other medical and nonmedical sources." *Elizabeth A. v. Comm'r of Soc. Sec.*, No. 2:22-cv-2313, 2023 WL 5924414, at *4 (S.D. Ohio Sept. 12, 2023) (citation modified).

Concerning the supportability factor, the ALJ determined that Dr. Clark's medical opinion was unsupported by the record available at that time. [Record No. 10 at 34] He explicitly found that Piscatelli's treatment records with other providers and his own reports of his relevant abilities did not support Dr. Clark's medical opinion. *Id.* at 34–35. In making this determination, the ALJ referenced records from Piscatelli's treatment with Ephriam McDowell Heart & Vascular Institute and Cecily R. Verhoven, APRN at Danville Family Physicians (discussed in greater detail below). *Id.*

When analyzing the consistency factor, the ALJ found Dr. Clark's opinion to be unpersuasive because it was "inconsistent with the state agency prior administrative medical findings" and Piscatelli's own reports. [Record No. 10 at 34] Specifically, Piscatelli reported to the provider at Ephriam McDowell Heart & Vascular Institute in January 2021 that "he walked a lot through the day and could perform physical activities without exertional

symptoms" and to Cecily R. Verhoven, APRN at Danville Family Physicians (where he also saw Dr. Clark) that he was "walking 6 miles a day" in March 2021. *Id.* at 34, 356 (Exhibit 1F), 471 (Exhibit 3F). The ALJ also referenced Piscatelli's own testimony that he is "able to generally manage the residence at which he lives alone." *Id.* at 34. In sum, the ALJ appropriately considered whether Piscatelli's own reports and treatment notes were consistent with Dr. Clark's medical opinion. And finding they were not, the ALJ determined Dr. Clark's opinion to be unpersuasive.

Piscatelli challenges the ALJ's finding that Dr. Clark's opinion was inconsistent with the state agency prior administrative medical findings. He argues that, because no other medical opinion addresses "the duration and frequency" of periods that he "would be off-task due to his episodes/attacks", the ALJ could not find Dr. Clarks' opinion to be *inconsistent*. [Record No. 14 at 5] However, state agency medical consultants Paul McLaughling, M.D. and Christine Booth, M.D. concluded that Piscatelli retained the ability to perform light work with some postural and environmental limitations. [Record Nos. 10 at 71–73, 91–94 and 13 at 7] Further, neither source indicated that his impairments (including those related to Meniere's disease) would require him to take additional breaks, lie down, or prop his feet. [Record No. 13 at 7] Instead, they considered his related symptoms and indicated that Piscatelli could work sitting, standing, or walking with normal breaks for about six hours in an eight-hour day. [Record No. 10 at 72–73, 91, 93]

In short, Piscatelli's "assertions that the ALJ failed to follow the required procedures for assessing medical opinions are belied by the record." *Napier v. Comm'r of Soc. Sec.*, 127 F.4th 1000, 1006 (6th Cir. 2025). The ALJ explicitly noted that Dr. Clark's opinion was unpersuasive while the opinions of Dr. O'Neill and Tracy Estridge, APRN were persuasive

because they were consistent with and supported by the evidence available at the time. [Record No. 10 at 34]; *Napier*, 127 F.4th at 1006.

In contrast, the ALJ found Dr. Clark's opinion unpersuasive because it was inconstant with the state agency's administrative medical findings and other evidence available at the time, *i.e.*, Piscatelli's self-report and treatment notes. *Id.* at 34; *Napier*, 127 F.4th at 1006 (noting the sufficiency of an ALJ's persuasiveness determination where the ALJ elaborated that certain aspects of the medical opinion appeared to be "internally unsupported" by other findings in the record). The ALJ articulated why he found Dr. Clark's medical opinion unpersuasive and, like the consistency factor, adequately addressed the supportability factor. *Napier*, 127 F.4th at 1006 (citing 20 C.F.R. § 404.1520c(c)(1)).

### (2)  Impact of Meniere's Disease Symptoms

Piscatelli's second argument is related to his first: that the ALJ's RFC determination did not address his "most limiting symptoms" from Meniere's disease due to the "ALJ's improper evaluation of [Dr. Clark's] opinion." [Record No. 11]  But in supporting this contention, he relies primarily on his own hearing testimony regarding his Meniere's disease symptoms. [Record Nos. 11-1 at 9–10 and 13 at 8]

> When it starts, I start feeling dizzy and my eyes will shake, and I know that it's happening so I'm always able to sit down or just get on the floor because once it actually hits, my entire body from my feet to the top of my head immediately breaks out in pouring sweat and I – it's like, I don't know how to describe it other than it's almost like being completely intoxicated, you can't walk, you can barely speak.  And then once it hits its peak, I violently vomit and the only way the episode will stop is when I'm done throwing up.  And then once I'm done throwing up, I just have to lay down and recover from it and it normally takes three to four hours to recover.  I normally go to sleep.

[Record No 11-1 at 3 (citing Record No. 10 at 55)]

The ALJ considered Piscatelli's testimony, other self-reported symptoms, and relevant medical evidence but ultimately determined his "statements concerning the intensity, persistence and limiting effects" of those symptoms not to be "entirely consistent with the medical evidence and other evidence in the record." [Record No. 10 at 32–33] The ALJ further considered the impact of Piscatelli's Meniere's disease in his RFC determination that he could perform light work. More specifically, he provided the following limitations: "[only] occasional climbing ramps or stairs; no climbing ladders, ropes, scaffolding; no work at unprotected heights; [only] occasional exposure to vibrations; . . . no work around dangerous machinery; [and] work environment to be no louder than a moderate noise level." *Id.* at 31–32.

## IV. Conclusion

As noted previously, a reviewing court does not try the case *de novo* and even if the court would resolve the dispute differently, "the Commissioner's decision must stand if supported by substantial evidence." *See Tyra v. Sec'y of Health & Human Servs.*, 896 F.2d 1024, 1028 (6th Cir. 1990). In this case, the ALJ's opinion is supported by ample evidence and consideration of all material facts. The Court cannot re-weigh the evidence in a manner such as to come to a different conclusion—even one which the evidence could have supported.

Based on the foregoing analysis and discussion, it is hereby

**ORDERED** as follows:

1.  Plaintiff Frank Piscatelli's motion for judgment [Record No. 11] is **DENIED**.

2.  Defendant Commissioner of Social Security's motion for judgment [Record No. 13] is **GRANTED**.

3.  This action is **DISMISSED** and **STRICKEN** from the docket.

Dated:  August 27, 2025.



Danny C. Reeves, District Judge
United States District Court
Eastern District of Kentucky